# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

---

## No. 2017-1821

---

## ALFRED PROCOPIO
### Appellant,

### vs.

## DAVID M. SHULKIN, M.D.
### Appellee

---

**Appeal from the United States Court of Appeals for Veterans Claims, Docket Number 15-4082**

---

## PETITION FOR HEARING *EN BANC*

---

John B. Wells
LA Bar #23970
P. O. Box 5235
Slidell, LA 70469-5235 (mail)
769 Robert Blvd. Suite 201D
Slidell, LA 70458 (physical)
Phone: (985) 641-1855
Direct: (985) 290-6940
E-mail: JohnLawEsq@msn.com

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

---

## No. 2017-1821

---

**ALFRED PROCOPIO**
**Appellant,**

**vs.**

**DAVID M. SHULKIN, M.D.**
**Appellee**

---

## CERTIFICATE OF INTEREST

---

NOW COMES BEFORE this Honorable Court, pursuant to Rule 47.6, attorney for appellant, ALFRED PROCOPIO, John B. Wells Esquire, to file the required certificate of interest providing herein:

The represented party and real party is ALFRED PROCOPIO.

The corporate disclosure statement required by Rule 26.1 does not apply as there are no corporations involved in this appeal.

The appellant will be represented by the Law Office of John B. Wells, 769 Robert Blvd., Suite 201D, Slidell, LA 70458 DBA Military-Veterans Advocacy, Inc.

/s/ John B. Wells
John B. Wells

i

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT
_____

## No. 2017-1821
_____

### ALFRED PROCOPIO
**Appellant,**

**vs.**

### DAVID M. SHULKIN, M.D.
**Appellee**
_____

### <u>Statement of Counsel required by Federal Circuit Rule 35(b)</u>

I.   Based on my professional judgment, I believe the decision of the court below and the decision of this Court in *Haas v. Peake,* 525 F.3d 1168 (Fed. Cir. 2008) *reh'g denied  Haas v. Peake*, 544 F.3d 1306, 1310 (Fed. Cir 2008)  is contrary to the following decision(s) of the Supreme Court of the United States or the precedent(s) of this court::

   A.  *Henderson ex rel. Henderson v. Shinseki* 131 S.Ct. 1197, 1206 (2011).

   B. *United States. v. Alaska*,  521 U.S. 1 (1997).

   C.  *United States v. California,* 381 U.S. 139 (1965).

   D.  *United States v. Louisiana*, 394 U.S. 11 (1968).

II.  Based on my professional judgment, I believe this appeal requires an answer to

one or more precedent setting questions of exceptional importance:

A. Whether *Haas v. Peake,* 525 F.3d 1168 (Fed. Cir. 2008) *reh'g denied  Haas v. Peake*, 544 F.3d 1306, 1310 (Fed. Cir 2008) was wrongly decided and should be overruled.

B.  Whether *Haas v. Peake,* 525 F.3d 1168 (Fed. Cir. 2008) *reh'g denied  Haas v. Peake*, 544 F.3d 1306, 1310 (Fed. Cir 2008), in light of *Henderson ex rel. Henderson v. Shinseki* 131 S.Ct. 1197, 1206 (2011).should be limited to its facts.

//s// John B. Wells
John B. Wells


ATTORNEY OF RECORD FOR: Appellant Alfred Procopio

# **TABLE OF CONTENTS**

Certificate of Interested Persons. ............................................................. I

Statement of Counsel. ......................................................................... ii

Table of Authorities. ........................................................................... v

Argument in Support of Hearing *En Banc*. .............................................. 1

    A.    This Appeal Should Be Heard *En Banc* Because it Requires an Answer to One or More Precedent Setting Questions of Exceptional Importance, Specifically Whether *Haas v. Peake,* 525 F.3d 1168 (Fed. Cir. 2008) *reh'g denied Haas v. Peake*, 544 F.3d 1306, 1310 (Fed. Cir 2008) Was Wrongly Decided and Should Be Overruled. .......................................... 1

    B.    This Appeal Should Be Hard *En Banc* Because it Requires an Answer to One or More Precedent Setting Questions of Exceptional Importance, Specifically Whether *Haas v. Peake,* 525 F.3d 1168 (Fed. Cir. 2008) *reh'g denied Haas v. Peake*, 544 F.3d 1306, 1310 (Fed. Cir 2008), in light of *Henderson ex rel. Henderson v. Shinseki* 131 S.Ct. 1197, 1206 (2011).Should Be Limited to its Facts. ................................................... 8

Conclusion. ...................................................................................... 12

Certificate of Service. ......................................................................... 13

## TABLE OF AUTHORITIES

**CASES:**

*Brown v. Gardner,* 513 U.S. 115 (1994). ........................................................ 9, 10

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S.
837 (1984). ........................................................................................... 1, 11

*Disabled American Veterans v. Gober*, 234 F.3d 682 (Fed. Cir. 2000). ................ 11

*Gallegos v.Principi*, 283 F.3d 1309 (Fed. Cir. 2002). ......................................... 11

*Gambill v. Shinseki*, 576 F.3d 1307 (Fed. Cir.2009). .......................................... 10

*Haas v. Nicholson* 20 Vet.App. 257 (Vet.App. 2006). ......................................... 7

*Haas v. Peake,* 525 F.3d 1168 (Fed. Cir. 2008). .......... ii, iii, v, 1, 2, 3, 6, 8, 9, 10, 12

*Haas v. Peake*, 544 F.3d 1306 (Fed. Cir 2008). ...... ii, iii, v, 1, 2, 3 6, 7, 8, 9, 10, 12,

*Henderson ex rel. Henderson v. Shinseki* 131 S.Ct. 1197 (2011). ... ii, iii, iv, 9, 10, 11

*Hodge v. West,* 155 F.3d 1356 (Fed. Cir.1998). ................................................. 10

*Sears v. Principi*, 349 F.3d 1326 (Fed. Cir. 2003). ............................................. 11

*United States. v. Alaska* 521 U.S. 1 (1997). ..................................................... ii, 9

*United States v. California,* 381 U.S. 139 (1965). .......................................... ii, 11

*United States v. Louisiana*, 394 U.S. 11 (1968). ............................................ ii, 12

*Walters v. National Assn. of Radiation Survivors*, 473 U.S. 305 (1985). ............... 10

*Zhang v. Slattery,* 55 F.3d 732 (2d Cir.1995). .................................................. 7, 8

**STATUTES:**

Submerged Lands Act 43 U.S.C. § 1301 *et. seq*............................................. 11, 12

**OTHER:**

1954 Geneva Accords https://www.mtholyoke.edu/acad/intrel/genevacc.htm (last visited June 6, 2014)..................................................................... 3, 4, 6

8 C.F.R. § 287.1(a)(1). .............................................................................. 8

38 C.F.R. § 3.311 (1985). ......................................................................... 7

38 C.F.R. § 3.313 (1990). ......................................................................... 7

73 Fed.Reg. 20,566, 20,568 (Apr. 16, 2008). ....................................... 1

Agreement On Ending The War And Restoring Peace In Viet-Nam, executed and entered into force on January 27, 1973. http://www.upa.pdx.edu/IMS/currentprojects/TAHv3/Content/PDFs/Paris_Peace_Accord_1973.pdf (last visited June 6, 2014). .................................................... 3, 6

Convention on the Territorial Sea and Contiguous Zone, [1958] 15 U.S.T. 1607, T.I.A.S. No. 5639. .............................................................. 3, 3, 8, 9, 11

IOM (Institute of Medicine). 2009. *Veterans and Agent Orange: Update 2008.* Washington, DC: The National Academies Press.................................................... 2

IOM (Institute of Medicine). 2011. *Blue Water Navy Vietnam Veterans and Agent Orange Exposure.* Washington, DC: The National Academies Press. ...................... 2

IOM (Institute of Medicine). 2012. *Veterans and Agent Orange: Update 2010.* Washington, DC: The National Academies Press.................................................... 3

*The Joint Chiefs of Staff and the War in Vietnam 1960-1968,* Part II http://www.dtic.mil/doctrine/doctrine/history/jcsvietnam_pt2.pdf.. ........................... 5

## ARGUMENT IN SUPPORT OF HEARING *EN BANC*

**A.      This Appeal Should Be Heard *En Banc* Because it Requires an Answer to One or More Precedent Setting Questions of Exceptional Importance, Specifically Whether *Haas v. Peake,* 525 F.3d 1168 (Fed. Cir. 2008) *reh'g denied  Haas v. Peake*, 544 F.3d 1306, 1310 (Fed. Cir 2008) Was Wrongly Decided and Should Be Overruled.**

In *Haas*, this court in a 2-1 decision found that the Secretary could define the limits of the presumption in their interpretation of the Agent Orange Act of 1991. The *Haas* court found ambiguity in the original statute and applied the deference required by *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (a court will defer to an agency's regulatory interpretation of a statute if the statute is ambiguous or contains a gap that Congress has left for the agency to fill through regulation).  Such deference applies, however, only when the interpretation is not arbitrary and capricious, or manifestly contrary to the intent of the statute.  *Chevron*, 467 U.S. at 483.  In other words, the interpretation must be reasonable.  *Id.*

To a large extent the grounds for ascertaining reasonablity depends on the information in the record.  The Secretary submitted a Federal Register finding *ex parte* and post oral argument in *Haas*.  The decision was rendered prior to any supplemental briefing being afforded by the court.  *See*, 73 Fed.Reg. 20,566, 20,568 (Apr. 16, 2008).  The VA submission contained glaring errors and

unsupported assertions which have since been widely debunked. Rebuttals were not available to the *Haas* court although they are in the record of the instant case. Additionally, the Secretary relied upon the erroneous conclusions of this notice in adjudicating Procopio's case.

Since the decision in *Haas*, other studies and information have become available that call into question the reasonableness of the VA's interpretation and the level of deference applied by *Haas*. This information is in the record.

The Federal Register notice called into question the applicability of a scientific study showing the shipboard distillation system enhanced the effect of the Agent orange dioxin. Subsequent to the decision in *Haas* two separate committees of the Institute of Medicine (IOM) validated that study. *See*, IOM (Institute of Medicine). 2009. *Veterans and Agent Orange: Update 2008.* Washington, DC: The National Academies Press and IOM (Institute of Medicine). 2011. *Blue Water Navy Vietnam Veterans and Agent Orange Exposure.* Washington, DC: The National Academies Press. Additionally, the Update 2008 specifically stated that "based on the available evidence, the committee recommends that members of the Blue Water Navy should not be excluded from the set of Vietnam-era veterans with presumed herbicide exposure." 2008 update at 656. This recommendation was not available to *Haas*.

Other scientific evidence discovered subsequent to the *Haas* decision discussed

hydrological evidence documentation detailing the infiltration of the Agent Orange

dioxin into the bays, harbors and territorial seas.  Notably, the IOM has also

recognized that it is "generally acknowledged that estuarine waters became

contaminated with herbicides and dioxin as a result of shoreline spraying and

runoff from spraying on land."  IOM (Institute of Medicine). 2012. *Veterans and*

*Agent Orange: Update 2010*. Washington, DC: The National Academies Press at

62.

Additionally, reliance on *Haas* is misplaced since the *Haas* court merely

questioned the applicability of the 1958 Convention's interpretation of the

definition of territorial seas but did not rule it invalid.  *Haas*, 544 F.3d 1306, 1309

(Fed. Cir. 2008).   More importantly, the  *Haas* court did not address Vietnam's

own definition of their territorial seas or the United States recognition of that

sovereignty.  Nor did *Haas* discuss Vietnamese sovereignty over the territorial seas

that was recognized by the 1954 Geneva Accords and the 1973 Paris Peace Treaty.

Finally, *Haas* itself recognized that their decision did not apply the pro-veteran

canon of statutory construction

Vietnam claims a 12 mile territorial sea.  That is consistent with the limitations

of the United Nations Convention on the law of the Sea Article 3 and the 1958

Convention.  The court below, however, rejected the reasoning, because the

Appellant had apparently not adequately explained why the law of the sea, as it

applies to Vietnam, should bind the VA.

Initially, it is not the place of the VA to define the sovereign territory of a

nation.  A nation defines its own sovereignty and the United States at its discretion

can recognize it or not.  Without question, the United States recognized the

Republic of Vietnam and its sovereignty.  The issue here is the limits of the United

States' recognition of the sovereignty of the Republic of Vietnam.  An

understanding of the Vietnam territory only begins to reveal the unreasonable

determination by the VA.

Since its founding, the Republic of Vietnam claimed sovereignty over territorial

seas and the bays as well as other inland waters.  Article 4 of the Agreement on the

Cessation of Hostilities in Vietnam, (hereinafter 1954 Geneva Accords) issued July

20, 1954 provides:

> The provisional military demarcation line between the two final regrouping
> zones is extended into the territorial waters by a line perpendicular to the
> general line of the coast.  All coastal islands north of this boundary shall be
> evacuated by the armed forces of the French union, and all islands south of it
> shall be evacuated by the forces of the People's Army of Viet-Nam.

Geneva Accords Article 4.    https://www.mtholyoke.edu/acad/intrel/genevacc.htm

(last visited June 6, 2014).  Article 24 of the 1954 Geneva Accords Confirms the

sovereignty of the territorial seas:

> The present Agreement shall apply to all the armed forces of either
> party. The armed forces of each party shall respect the demilitarized
> zone and the territory under the military control of the other party, and
> shall commit no act and undertake no operation against the other party
> and shall not engage in blockade of any kind in Viet-Nam.
> For the purposes of the present Article, the word "territory" includes
> territorial waters and air space.

*Id*. Accordingly, the founding document of the Republic of Vietnam recognizes its

sovereignty over the territorial seas.

The next question that must be answered is whether the United States

recognized the territorial seas, Vietnamese sovereignty over those seas and the

breadth of the territorial seas. Initially, as documented in the history of the Joint

Chiefs of Staff, the United States recognized a three mile sovereign territorial seas:

> The Saigon government would announce that it had asked the United
> States for help in countering sea infiltration. It would further declare
> its territorial waters up to the three-mile limit a "Defensive Sea Area"
> in which it would, with US help, stop and search any vessel of any
> nation suspected of supporting the Viet Cong.

*The Joint Chiefs of Staff and the War in Vietnam 1960-1968,* Part II at page 256

http://www.dtic.mil/doctrine/doctrine/history/jcsvietnam_pt2.pdf.

The Secretary of Defense, acting on behalf of the President, later expanded the

United States recognition of the sovereign territorial seas to twelve miles.

> Whereas the earlier rules had established a three-mile limit for
> territorial waters, the Secretary changed this limit to 12 miles. He

5

> appreciated the Joint Chiefs' "concern over the apparent recognition
> of a twelve-mile territorial limit but, solely for the purpose of these
> rules," he believed it was "not desirable" to "bring these claims to
> issue with State now.

*Id.* at 358.  The unilateral action of the Secretary of Defense recognized the 12 mile limit for the territorial seas of the Republic of Vietnam.

The matter was formally ratified by the United States in the Agreement On Ending The War And Restoring Peace In Viet-Nam, executed and entered into force on January 27, 1973.

http://www.upa.pdx.edu/IMS/currentprojects/TAHv3/Content/PDFs/Paris_Peace_Accord_1973.pdf

(last visited June 6, 2014).  Article 1 of that agreement provides that:

> The United States and all other countries respect the independence,
> sovereignty, unity, and territorial integrity of Viet-Nam as recognized by the
> 1954 Geneva Agreements on Viet-Nam.

*Id.*  In other words, the United States formally recognized the sovereignty of the territorial seas of both the Republic of Vietnam and the Democratic Republic of Vietnam.   This information was not presented to the *Haas* court.

The *Haas* Court danced around the question of whether or not the territorial seas constituted sovereign territory, but did not decide the issue.  The *Haas* court noted that the Veterans Court had addressed some other "definitions" but that Mr. Haas had not explained why they were not relevant.  *Id.* at 1184.  The Veterans

Court had compared 38 C.F.R. § 3.311a(a)(1) (1985)[1] (defining "service in the

Republic of Vietnam" as "including service in the waters offshore and service in

other locations, if the conditions of service involved duty or visitation in the

Republic of Vietnam"), with 38 C.F.R. § 3.313 (1990) (entitled "Claims based on

service in Vietnam" and defining "service in the Republic of Vietnam" as

including "service in the waters offshore, or service in other locations if the

conditions of service involved duty or visitation in Vietnam"). *Haas v. Nicholson*

20 Vet.App. 257, 264 (Vet.App. 2006).

In a denial of a request for rehearing, the Federal Circuit in *Haas* argued that

there are some circumstances when the sovereign territory does not include the

territorial seas. The *Haas* majority argued that in light of *Zhang v. Slattery,* 55

F.3d 732, 754 (2d Cir.1995), which held that statutory references to presence "in" a

country do not include presence in the airspace or in the territorial waters

surrounding the country, the words "service in the Republic of Vietnam" could be

described as ambiguous. *Haas*, 544 F.3d at 1309. In actuality, the Second Circuit

in *Zhang*, did not question whether the territorial seas constituted sovereign

territory. The *Zhang* court noted that the issue dealt with regulation of human

---

[1]  This provision, now predesignated 38 C.F.R. 3.309(e), authorizes benefits for Non Hodgkins Lymphoma, including Blue Water Navy veterans.

habitats by immigration law, which applied to land rather than sea, and that because a person is restrained on a vessel and cannot move directly ashore they are not considered to have a physical presence in the country. *Id*. at 754. *Zhang* actually noted that 8 C.F.R. § 287.1(a)(1) defined the U. S. external boundary as:

> "the land boundaries and the territorial sea of the United States extending 12 nautical miles from the baselines of the United States determined in accordance with international law."

This is effectively the same definition that should be applied to the sovereign territory of Vietnam.

The *Haas* court majority goes on to argue that since territorial seas are sometimes included in the definition of the United States and sometime not, depending upon which portion of the United States Code is referenced, that it cannot be said that the territorial seas were part of the RVN. *Haas* 544 F.3d at 1309-1310. This is clear error. Under the 1958 Treaty, the United States can limit its own jurisdiction for a particular internal purpose. It cannot limit the jurisdiction of another nation. In other words, even if *arguendo* there is ambiguity in the application of the Treaty to United States waters, that does not translate into ambiguity concerning the territorial seas of Vietnam.

**B.    This Appeal Should Be Hard *En Banc* Because it Requires an Answer to One or More Precedent Setting Questions of Exceptional Importance, Specifically Whether *Haas v. Peake*, 525 F.3d 1168 (Fed. Cir. 2008) *reh'g denied  Haas v. Peake*, 544**

**F.3d 1306, 1310 (Fed. Cir 2008), in light of *Henderson ex rel.
Henderson v. Shinseki* 131 S.Ct. 1197, 1206 (2011).Should Be
Limited to its Facts.**

The *Haas* Court specifically noted that their decision did not include

consideration of the long accepted canon of statutory interpretation holding that

ambiguity in a veteran's benefits statute should be resolved in favor of the veteran.

*Brown v. Gardner,* 513 U.S. 115, 117-18 (1994).  The Federal Circuit noted that

the argument was waived because it was not raised in the court below.  *Haas*, 544

F.3d at 1308.  In the instant case, Appellant has carefully protected that argument.

Under the accepted "pro-claimant" provisions of *Brown* and other cases,

defense of an agency's interpretation must be balanced against the Congressional

intent that any ambiguity be resolved in favor of the veterans and their survivors

who might be affected.  Accordingly, the Treaty provisions should be given their

plain meaning.

The Supreme Court has adopted the definitions of the 1958 Treaty,

incorporating it into domestic law. *United States. v. Alaska* 521 U.S. 1, 8 (1997).

Any ship entering the territorial seas of Vietnam has entered that nation's

sovereign territory.  Since they operated within the boundaries, these ships were

within the national boundaries and served "in the Republic of Vietnam" for

purposes of domestic law.  Even if the United States had not recognized

sovereignty over the territorial seas, this determination is and should be binding on the Secretary, especially in light of the pro-claimant canons discussed in *Gardner, supra.*

Congress has designed the VA's adjudicatory process "to function throughout with a high degree of informality and solicitude for the claimant." *Walters v. National Assn. of Radiation Survivors*, 473 U.S. 305, 311 (1985). A unanimous Supreme Court held "the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." *Henderson ex rel. Henderson v. Shinseki* 131 S.Ct. 1197, 1206 (2011). The Federal Circuit has also recognized the paternalistic non-adversarial intent of the system designed by Congress. *Gambill v. Shinseki*, 576 F.3d 1307, 1317 (Fed. Cir.2009). The *Gambill* court described the process as uniquely pro-claimant." *Id*. at 1316. See*, also*, *Hodge v. West,* 155 F.3d 1356, 1362 (Fed. Cir.1998)

This Court should now consider the long accepted canon of statutory interpretation holding that ambiguity in a veteran's benefits statute should be resolved in favor of the veteran. *Haas*, 544 F.3d 1308. In applying those canons of construction, Procopio must be given the benefit of every doubt and any ambiguity construed in his favor. *See, Brown* and *Henderson*, *supra*.

Appellant concedes that some decisions of this Court have questioned whether

10

the pro-claimant construction can overcome *Chevron* deference. *See*, *Sears v. Principi*, 349 F.3d 1326, 1131-32 (Fed. Cir. 2003); *accord Gallegos v.Principi*, 283 F.3d 1309, 1314 (Fed. Cir. 2002), *cert. denied* 537 U.S. 1071 (2002); *See also Disabled American Veterans v. Gober*, 234 F.3d 682, 692 (Fed. Cir. 2000). Here an *en banc* hearing is required to ascertain whether these pre-*Henderson* cases are applicable in light of the Supreme Court's rulings reaffirming the pro-claimant canon.

The *Haas* court found ambiguity in the statutory phrase "served in the Republic of Vietnam" as applied to service in the waters adjoining the landmass of Vietnam. *Haas* 525 F.3d at 1184. In denying the Petition for Rehearing, the *Haas* court found that the failure to apply the accepted statutory canon was waived because it was not raised in the court below. *Haas v. Peake*, 544 F.3d at 1308. In the instant case, Plaintiffs have carefully protected that argument.

Irrespective of whether there is ambiguity in the statute or the regulation, the application of the pro-veteran canons of construction require the most favorable interpretation of the statutory phrase "served in the Republic of Vietnam" as applied to service in the waters adjoining the landmass of Vietnam.

The 1958 Treaty was adopted for purposes of the Submerged Lands Act in *United States v. California,* 381 U.S. 139, 165 (1965) and *United States v.*

*Louisiana*, 394 U.S. 11 (1968). The boundaries of internal or inland waters, territorial seas and the contiguous zone usually only arise in the course of disputes over submerged lands. Since sovereignty is conceded over inland waters and the territorial seas, the only question is where to draw the line. It obviously cannot be drawn on the water but only on the underlying submerged land.[2]

Applying the appropriate canons of statutory construction in veterans cases, the *Haas* case, which did not embrace those canons, must be limited to its facts.

## CONCLUSION.

The Court should grant *en banc* hearing in this matter.

Respectfully Submitted,

/s/ John B. Wells
John B. Wells
LA Bar #23970
P. O. Box 5235
Slidell, LA 70469-5235 (mail)
769 Robert Blvd. Suite 201D
Slidell, LA 70458 (physical)
Phone: (985) 641-1855
Direct: (985) 290-6940
E-mail: JohnLawEsq@msn.com

---

[2] The Submerged Lands Act was passed by Congress to *inter alia*, define the boundaries of State sovereignty over submerged lands under navigable waters. 43 U.S.C. § 1301 *et. seq.*

## CERTIFICATE OF SERVICE

I, John B, Wells, do hereby certify that I have on this date served via the Court's EC/CMF system, a true and exact copy of this petition to the court and to counsel for Appellees this 26th day of April, 2017.

//s// John B. Wells
John B. Wells

13